## 37550. BURKE v. THE STATE.

HILL, Presiding Justice.

James Earl Burke was convicted of burglary, aggravated assault and murder and was sentenced to life imprisonment for the murder and to twenty years each on the other two charges, all to be served consecutively. On motion for new trial, the trial court vacated the sentence for burglary. Burke appeals.

Ronald Manis saw a car at the summer home of his neighbor, Garah Webber, on April 30, 1980. Since he maintained her yard, Manis approached the house in order to collect the money she owed him. He was told by a man who met him on the porch that she had moved. Because Manis suspected burglary, he returned soon after with his father, Eugene Manis. The older Manis, with a pistol in his hand, approached the car parked in the Webber driveway, which two men, one with a crowbar, had entered as the Manises arrived. Apparently when the driver refused to get out of the car, Manis walked toward the front of it; the driver then opened the door and pointed a gun at Manis' back. Manis wheeled around and emptied his pistol into the car door. The driver killed the older Manis with a shot in the forehead. Meanwhile, the younger Manis had re-entered his vehicle. The same man who had shot his father walked over to the car and fired two shots into it, hitting young Manis in the head and in the chest. He survived and at trial identified the gunman as the defendant.

Later that night, in Whitfield County, two federal undercover agents of the Alcohol, Tobacco and Firearms Bureau of the Treasury Department were purchasing stolen goods and guns from the defendant and Robert (Bobby) McKenzie as part of a covert operation. At the time, Agent H. W. O'Steen was wearing a concealed transmitter which was being monitored by agent Richard Hampton. After attempting to sell a car with bullet holes in it, the defendant told Agent O'Steen about killing "two dudes" with a .44 pistol at a burglary site because he thought they had obtained his automobile tag number. He related shooting a man, by one shot in the brain, and killing the younger one, who was sitting in his car, with two shots into

the car. The agents purchased the .44 pistol among other things. This conversation was recorded and transcribed, and the tape was played to the jury, who followed the conversation on written copies of the transcription.

1. The first enumeration of error challenges the aggravated assault conviction since the jury returned a general verdict of guilty of murder where both felony murder and malice murder were charged. On motion for new trial, the trial court vacated the sentence for burglary because the defendant is entitled to the benefit of the doubt on the jury's failure to specify felony or malice murder. *Dampier v. State,* 245 Ga. 427 (13) (265 SE2d 565) (1980); *Reed v. State,* 238 Ga. 457 (7) (233 SE2d 369) (1977). On appeal Burke argues that the aggravated battery may have supported the felony murder conviction and must also be set aside. He overlooks, however, that in its felony murder charge (and recharge) the trial court specifically relied on burglary as the supporting felony. Thus, this enumeration of error is without merit.

2. In his second enumeration, the defendant contends the trial court erred in allowing the jury, over his objection, to read copies of the transcription of the tape while it was played to them. He points out that Agent Hampton had not compared the transcription to the tape recording. Contrary to defendant's assertions on this issue, a proper foundation was laid by the testimony of Agent O'Steen, who was a party to the taped conversations and identified the voices and who assisted in the transcription and verified its accuracy. With the proper foundations, neither the tape as a whole nor the transcript thereof is inadmissible as contended by the defendant.

The chain of possession of the tape was established by the testimony of Agent Hampton, who taped the broadcast conversations between Burke and O'Steen. Hampton also testified that the condition of some tabs he placed on the tapes indicated that the tapes had not been altered or erased. *Harris v. State,* 237 Ga. 718, 724 (230 SE2d 1) (1976). Defendant complains that Hampton testified the day before the tape was played at trial and that the state failed to prove that the tape had not been altered overnight. The foundation for admission of the tape was made at trial and the defendant did not challenge its admissibility based on the overnight delay.

Where the proper foundation for admission of a taped conversation is laid and portions of the conversation are inaudible, it is within the discretion of the trial judge to admit the tape. See *State v. Knowles,* 247 Ga. 218 (274 SE2d 468) (1981).

The trial court did not err in allowing the jury to read the transcription of the tape as it was played.

3. Defendant complains in enumeration of error three, that the

tape impermissibly placed his character in issue and thus should not have been played to the jury. In explaining why he shot the two men, the defendant said he had "built time in the pen before" and "before I'll go back to it again I'll kill somebody...." As was said in *Dampier v. State,* supra at p. 434, "the statements complained of were an integral part of a criminal confession, and such statements are not rendered inadmissible because the language used therein indicates that the accused had committed another and separate offense."

*Head v. State,* 246 Ga. 360 (7) (271 SE2d 452) (1980), relied on by the defendant, is inapposite as it refers to the admissibility of independent evidence of separate crimes rather than statements by the defendant himself which are part of an incriminating statement relevant to the crime on trial. We find no error.

4. The trial court acted well within its discretion in sentencing Burke to consecutive sentences with the life sentence for murder last,[1] and he will not be heard to complain that doing so constitutes an attempt to retain or control parole authority by the court, in light of the regulations of the State Board of Pardons and Paroles. VI Rules and Regulations of the State of Georgia § 475-3-.06 (3); *Hoerner v. State,* 246 Ga. 374 (2) (271 SE2d 458) (1980); Code Ann. § 27-2510. *Brown v. State,* 246 Ga. 251 (5) (271 SE2d 163) (1980), relied upon by the defendant, is inapposite because there the court sentenced the defendant to life imprisonment plus probation (under the supervision of the court).

5. Defendant enumerates error on the refusal of the trial court to make a photostatic copy of the prosecution's file, examined in camera, part of the record on appeal. He offers no suggestion whatsoever as to what material could be in the prosecutor's file which could in any way be exculpatory in this open and shut case. He neither alleges nor shows any prejudice to his case resulting from the trial court's failure to copy the prosecutor's file. Although the trail court, after an in camera inspection, should make the file available for review by an appellate court upon the defendant's request to incorporate it into the case record, *Wilson v. State,* 246 Ga. 62, 65 (268 SE2d 895) (1980), this defendant has offered no suggestion as to what this court should look for if the file were transmitted to us. He has made no attempt to show that the outcome of his trial might have been affected by material in the file. Thus, he has failed to show cause for this court to review the material examined by the trial court.

---

[1] The state sought the death penalty for murder. The jury's recommendation, however, was to sentence Burke to a "life sentence with no parole." The trial court entered a life sentence on the jury's verdict.

*Wilson v. State,* supra.

6. Although the defendant objected to the omission of charges on voluntary and involuntary manslaughter, no written requests for these charges were made by the defense. Therefore, the trial court did not err in failing to so charge. *State v. Stonaker,* 236 Ga. 1 (222 SE2d 354) (1976). Thus we need not consider defendant's assertions on appeal that he shot the deceased in self-defense or as a result of irresistible passion resulting from serious provocation.

*Judgment affirmed. Jordan, C. J., Marshall, Clarke and Smith, JJ., concur. Gregory, J., concurs in the judgment only.*

DECIDED SEPTEMBER 9, 1981.

*Rex Wallace Garner,* for appellant.

*Darrell E. Wilson, District Attorney, Mickey R. Thacker, Assistant District Attorney, Arthur K. Bolton, Attorney General, William B. Hill, Jr., Assistant Attorney General,* for appellee.