A11A0727. THE STATE v. THAXTON.

(715 SE2d 480)

MILLER, Presiding Judge.

The State appeals from the grant of defendant Randall Thaxton's motion for discharge and acquittal for violation of his constitutional right to a speedy trial. See OCGA § 5-7-1 (a) (1) (authorizing the State to appeal, among other things, from the dismissal of an indictment). The State contends that the trial court erred in its

---

[17] Neither the appeal nor the briefs address the resolution of July 6, 2009.

analysis of the *Barker*[1] factors by: (i) failing to weigh heavily against Thaxton his failure to assert his right to a speedy trial before indictment, and (ii) failing to treat as relatively benign the post-arrest, pre-indictment delay at issue given the relative significance of the parties' activities in this case. For the reasons that follow, we reverse the trial court's order and remand this case with direction.

The record shows that Randall Thaxton was arrested on or about October 30, 2008, for seven counts of dogfighting (OCGA § 16-12-37), cruelty to animals (OCGA § 16-12-4), and possession of more than one ounce of marijuana (OCGA § 16-13-30). Thaxton was appointed counsel on November 4, 2008, and has been represented by counsel at all times since that date.

On December 3, 2008, Thaxton entered into a consent bond and was released from jail. The conditions of Thaxton's release on bond included GPS monitoring (except for verified daytime employment) and avoidance of all contact with animals.

On January 11, 2010, Thaxton was indicted on one felony count of possession of more than one ounce of marijuana (OCGA § 16-13-30 (j) (1)), and three counts of misdemeanor cruelty to animals (OCGA § 16-12-4 (b)). A series of continuances to facilitate discovery were thereafter granted at Thaxton's request. On September 27, 2010, the trial court granted the last of Thaxton's requests for continuance and contemporaneously granted appointed counsel's motion to withdraw as counsel, and Thaxton's current counsel was retained to represent him.

Thaxton filed his motion for discharge and acquittal on February 15, 2010, pointing to pre-indictment delay following his arrest. The trial court granted Thaxton's motion, finding that the pre-indictment delay was excessive and that Thaxton suffered prejudice to his defense. The State filed a motion for reconsideration of the decision. Following a hearing, the trial court denied the State's motion, upholding its dismissal of the criminal action based upon a violation of the constitutional right to a speedy trial. The instant appeal ensued.

Two types of pretrial delay have been recognized as possible violations of an accused's constitutional rights to a speedy trial. One type is delay that *precedes* the arrest or the indictment, which implicates due process guarantees under the Fifth and Fourteenth Amendments. See *Jones v. State*, 284 Ga. 320 (1) (667 SE2d 49) (2008). The second type of pretrial delay is that which occurs *after* an arrest or indictment, to which Sixth Amendment standards apply. See id. at 322 (2); *Haisman v. State*, 242 Ga. 896, 898 (2) (252 SE2d

---

[1] *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

397) (1979). Significantly, at the point of arrest, one becomes "an accused" and Sixth Amendment standards apply. See *Haisman*, supra, 242 Ga. at 898 (2) (citing *Dillingham v. United States*, 423 U. S. 64, 65 (96 SC 303, 46 LE2d 205) (1975) and *United States v. Marion*, 404 U. S. 307, 320-325 (III) (92 SC 455, 30 LE2d 468) (1971)).

In this case, Thaxton's motion for discharge and acquittal complained of the 15-month delay that occurred after the date of his arrest on or about October 20, 2008. Since the delay occurred after his arrest, Sixth Amendment standards must be applied in resolving the instant speedy trial claim. See *Haisman*, supra, 242 Ga. at 898 (2).

> The template for deciding all constitutional speedy trial claims under the Sixth Amendment and the Georgia Constitution is laid out in the 1972 case of *Barker v. Wingo*, [supra,] and the 1992 decision in *Doggett v. United States*[, 505 U. S. 647 (112 SC 2686, 120 LE2d 520) (1992),] which is to date the Supreme Court's last detailed discussion of the topic. The analysis has two stages. First, the court must determine whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered presumptively prejudicial. If not, the speedy trial claim fails at the threshold. If, however, the delay has passed the point of presumptive prejudice, the court must proceed to the second step of the *Barker-Doggett* analysis, which requires the application of a delicate, context-sensitive, four-factor balancing test to determine whether the accused has been deprived of the right to a speedy trial.

(Punctuation and footnotes omitted.) *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008). The *Barker* balancing factors are as follows: (a) whether pretrial delay was excessively long; (b) whether the defendant or the State is primarily responsible for the delay; (c) whether the defendant timely asserted his right to a speedy trial; and (d) whether the defendant was prejudiced by the delay. *State v. Porter*, 288 Ga. 524, 525-526 (2) (a) (705 SE2d 636) (2011). No one factor is necessary or sufficient to sustain a finding that the right to a speedy trial has been denied; rather, "the factors should be considered together in a balancing test of the conduct of the prosecution and the defendant." (Citation omitted.) *State v. Gleaton*, 288 Ga. 373, 374 (703 SE2d 642) (2010). On appeal, we review the trial court's weighing of each *Barker* factor and its balancing of all

four factors only for abuse of discretion. *Porter*, supra, 288 Ga. at 525 (2) (a).

> However, where the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished. In addition, the trial court's order must provide sufficient findings of fact and conclusions of law to permit this Court to determine if the trial court properly exercised its discretion under the *Barker* analysis.

(Citations and punctuation omitted.) Id. at 526 (a). The trial court made several errors in its application of this framework to Thaxton's speedy trial claim, which requires reversal and remand of the case for proper consideration. See id.

1. *The Threshold Inquiry*. Prior to application of the *Barker* balancing test, we first consider the length of the delay.

> The length of the delay factors into the speedy trial analysis in two respects: First, a court must determine whether the delay has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, since, by definition, the accused cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the delay passes this threshold test of "presumptive prejudice," then the *Barker* inquiry is triggered. The delay is then considered a second time by factoring it into the prejudice prong of the *Barker* analysis, with the presumption that pretrial delay has prejudiced the accused intensifying over time. However, the presumptive prejudice arising from delay cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria. Instead, it is part of the mix of relevant facts, and its importance increases with the length of delay.

(Citations and punctuation omitted.) *Brown v. State*, 287 Ga. 892, 894-895 (1) (a) (700 SE2d 407) (2010). See also *Higgins v. State*, 308 Ga. App. 257, 258-259 (1) (707 SE2d 523) (2011).

"The constitutional right to a speedy trial attaches on the date of the arrest or when formal charges are initiated, whichever first occurs." (Citation and punctuation omitted.) *Higgins*, supra, 308 Ga. App. at 259 (1). "Where a trial has not occurred, the delay should be calculated from the date of arrest or other formal accusation to the date on which a defendant's speedy trial motion was granted or denied[.]" *Porter*, supra, 288 Ga. at 526 (2) (b). Under this calculation, the delay extended from Thaxton's arrest on or about October

30, 2008, until the grant of Thaxton's speedy trial motion on October 6, 2010. This period reflects a delay of approximately 23 and a half months.[2] Generally, a delay exceeding one year is deemed as presumptively prejudicial. See *Porter*, supra, 288 Ga. at 526-527 (2) (b). Since the delay in this case was presumptively prejudicial, the application of the *Barker* balancing test was in fact triggered. See id.

2. *Barker Balancing Test*.

(a) *Length of the Delay*. Under the first factor of the *Barker* test, we again consider the full length of the delay.

> It is important that trial courts not limit their consideration of the lengthiness of the pretrial delay to the threshold question of presumptive prejudice and remember to count it again as one of four criteria to be weighed in the balancing process at the second stage of the *Barker-Doggett* analysis. As the [United States] Supreme Court has explained, this latter inquiry is significant to the speedy trial analysis because the presumption that pretrial delay has prejudiced the accused intensifies over time.

(Citations and punctuation omitted.) *Ruffin*, supra, 284 Ga. at 56-57 (2) (b) (i). "A delay is considered uncommonly long under the test to the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." (Citation omitted.) *Higgins*, supra, 308 Ga. App. at 260 (2) (a).

Here, the trial court found that the pre-indictment delay "was excessive and inordinately so." The trial court further explained that the pre-indictment delay was "unusual" and exceeded the time typically necessary for the State to proceed. Thus, presumably the trial court weighed this factor against the State. To the extent that the majority of the delay occasioned in this case was attributed to the pre-indictment delay, such delay was significant in the analysis of this factor. As previously stated, prejudice is presumed with a delay of approximately one year. This factor could properly be weighed against the State. See *Ruffin*, supra, 284 Ga. at 57-59; *Higgins*,

---

[2] The trial court nevertheless concluded that "[t]he issues with the case lie primarily in the delay prior to indictment." In turn, the State's appeal only challenges the trial court's rulings as to the pre-indictment delay. Based upon this calculation, the length of the pre-indictment delay began with the date of Thaxton's arrest on or about October 30, 2008, and ended when he was formally indicted on January 11, 2010, which was 14 and a half months. Although the State's appeal only challenges the findings as to the pre-indictment delay of 14 and a half months, the same result is obtained in this case. While the State seeks to rely upon the shorter time frame to challenge the speedy trial matter, the *Barker* analysis requires us to consider the entire relevant interval. See *Porter*, supra, 288 Ga. at 526 (2) (b); *Higgins*, supra, 308 Ga. App. at 259 (1) ("[F]or purposes of our analysis, the computation of the length of delay ends when the trial court rules on the motion to dismiss.").

supra, 308 Ga. App. at 260 (2) (a).

(b) *Reason for Delay*. The second factor in the *Barker-Doggett* analysis required the trial court to examine both the reason for the delay and whether the delay was attributable to the defendant or to the State. See *Porter*, supra, 288 Ga. at 527 (2) (c) (2). Here, the State explained that the pre-indictment delay at issue was attributable to the investigatory efforts required in preparing for a potential prosecution on dogfighting charges under the amended statute.[3] The prosecutor assigned to the case stated that she had no experience in prosecuting dogfighting cases and thus, she had to spend time to learn about the intricacies related to the crime. Ultimately, the State decided not to pursue the dogfighting charge, and Thaxton was instead indicted for one count of felony drug possession and three counts of misdemeanor cruelty to animals.

The trial court rejected the State's explanation as "insufficient" and noted that even considering the delay associated with the new dogfighting statute, the State nevertheless had not adequately explained its failure to expeditiously pursue the other ordinary drug and animal cruelty charges.[4] Notwithstanding its opinion regarding the State's failure to proceed more expeditiously, the trial court further found that there was no evidence of intentional delay by the State for the purpose of gaining an advantage over Thaxton. It thus weighed the reason for the delay as a "relatively benign" factor against the State. The trial court's findings and conclusions in this regard were correct.

> Investigative delay is acceptable, whereas delay undertaken by the Government solely to gain tactical advantage over the accused is not acceptable. "[P]rosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." *United States v.*

---

[3] The statute proscribing dogfighting, OCGA § 16-12-37, was amended in May 2008. See Ga. L. 2008, p. 114, § 1-1/HB 301. Under the amendment, the provisions defining the offense were substantially revised.

[4] Beyond the pre-indictment delay was a further delay of approximately nine months. This delay was purportedly the result of discovery matters. Thaxton claimed that although he had filed discovery requests on February 10, 2010, he did not receive any discovery from the State until four months later on June 17, 2010. Thereafter, Thaxton and the State agreed to a consent order of continuance from the August 2010 trial calendar based, in part, on the need for additional discovery. The trial court determined that "any delay subsequent to the indictment did not inure to the benefit of [Thaxton], nor to the detriment of the State." The State does not challenge the trial court's determination as to any post-indictment delay. We nevertheless note that the discovery delay in this regard appears to be attributable to the State. There has been no showing, however, that the delay was intentionally caused to benefit the State.

*Lovasco*, 431 U. S. 783, 791 (II) (97 SC 2044, 52 LE2d 752) (1977).

(Citation and punctuation omitted.) *Jones*, supra 284 Ga. at 321 (1). A determination as to whether a case is being prosecuted with the customary promptness depends upon the peculiar circumstances of the case. See *Jackson v. State*, 279 Ga. 449, 452 (3) (614 SE2d 781) (2005). For example, "[t]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." (Citation and punctuation omitted.) *Williams v. State*, 282 Ga. 561, 563 (4) (651 SE2d 674) (2007). As the trial court found here, notwithstanding the State's investigatory efforts regarding the dogfighting crime, the State had not adequately explained its failure to expeditiously pursue the common drug and animal cruelty charges. Since the State failed to provide a clear reason for the delay pertaining to those charged offenses, we treat the delay as caused by the State's negligence. See *Boseman v. State*, 263 Ga. 730, 733 (1) (b) (438 SE2d 626) (1994); *Frazier v. State*, 277 Ga. App. 881, 882 (b) (627 SE2d 894) (2006). On the other hand, since there was no evidence that the State deliberately delayed the trial in an effort to gain a tactical advantage, this factor was relatively benign. See *Frazier*, supra, 277 Ga. App. at 882 (b).

(c) *Assertion of the Right to Speedy Trial.* The record reflects that Thaxton did not assert his right to a speedy trial until he filed his motion for discharge and acquittal on February 15, 2010, which was almost 16 months after his arrest.[5] Although Thaxton complained of the pre-indictment delay, the trial court's order noted that Thaxton had not asserted his right to a speedy trial throughout that period of time. The trial court recognized that the failure to assert the speedy trial right weighs heavily against the defendant. In applying the *Barker* test, however, the trial court declined to weigh this factor heavily against Thaxton, opining that "there's not a whole lot you can do until there's an indictment"; "it's tactically advantageous to the defense to sit on it a little while . . ."; and "I don't want to force every case to be a demand for speedy trial case." The trial court's reasoning was flawed.

Thaxton had a Sixth Amendment right to a speedy trial, which attached at the time of his arrest and could have been asserted thereafter. See *Haisman*, supra, 242 Ga. at 898 (2); *State v. Hight*, 156 Ga. App. 246, 247 (274 SE2d 638) (1980).

---

[5] "[A] defendant may assert his constitutional speedy trial right through a motion to dismiss asserting a violation of that right." (Citations and punctuation omitted.) *Porter*, supra, 288 Ga. at 528 (2) (c) (3).

[A] defendant may assert his constitutional right to a speedy trial at any time after he is arrested; he need not wait until indictment. However, once his constitutional right accrues, the defendant has the responsibility to assert it, and delay in doing so normally will be weighed against him.

(Citations and punctuation omitted.) *State v. Pickett*, 288 Ga. 674, 676 (2) (c) (3) (706 SE2d 561) (2011). Supreme Court of Georgia precedent, however, recognizes that "a trial court has the discretion to mitigate the weight given this factor when a defendant fails to assert his right during the period between arrest and indictment if he was out on bond and without counsel." Id. (citing *Gleaton*, supra, 288 Ga. at 373). Here, although Thaxton was on bond, he became represented by counsel within a week of his arrest and continued to be represented by counsel thereafter. As such, there was no basis for mitigating Thaxton's delay in asserting his right to a speedy trial on this recognized basis, nor on the bases stated by the trial court. "Our cases hold that an extended delay in asserting the right to a speedy trial should normally be weighed *heavily* against the defendant." (Citations omitted.) *Porter*, supra, 288 Ga. at 529 (2) (c) (3). See also *Haisman*, supra, 242 Ga. at 898 (2). The trial court's failure to heavily weigh this factor against Thaxton was erroneous.

(d) *Prejudice to the Defendant.* The fourth *Barker* factor involves three interests that the speedy trial right was designed to protect: "(i) prevent[ing] oppressive pretrial incarceration; (ii) [minimizing] anxiety and concern of the accused; and (iii) [limiting] the possibility that the defense will be impaired." (Citation and punctuation omitted.) *Ruffin*, supra, 284 Ga. at 64 (2) (b) (iv).

Although the trial court found prejudice to the defendant, it made no finding as to whether Thaxton suffered excessive pretrial incarceration. This is perhaps because Thaxton was incarcerated for approximately one month prior to his release from confinement on bond. While Thaxton was under restrictive bond conditions, the trial court properly noted that Thaxton had agreed to those conditions by entering into the consent bond order. The trial court otherwise found that there was no evidence that Thaxton had suffered anxiety or concern due to the delay. The trial court further found that there was no evidence of any impairment of his defense attendant to the delay. See *Doggett*, supra, 505 U. S. at 656 (III) (A). Given the foregoing findings, the trial court erred in granting Thaxton's motion for discharge and acquittal based upon its unexplained conclusion that the prejudice was "substantial enough."

(e) *Balancing the Four Factors.* While the trial court made certain findings of fact related to the *Barker* factors, it failed to

conduct a balancing test of the four factors as required by *Barker*. Rather, upon reconsideration of its order granting discharge and acquittal, the trial court stated that "really what it boils down to is, the length of the delay versus the reason for the delay." The trial court's analysis was clearly erroneous.

> As the United States Supreme Court explained in *Barker*[,] [w]e regard none of the four factors as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. The *Barker* Court emphasized that its balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. Our Court has often repeated this admonition to consider and weigh all four factors under the circumstances of each case[.]

(Citations and punctuation omitted.) *Porter*, supra, 288 Ga. at 532-533 (2) (d). In the absence of findings of fact and conclusions of law consistent with the *Barker* balancing test, "there is no exercise of discretion for this Court to review, and the trial court's order must be vacated and the case remanded for the entry of a proper order pursuant to *Barker*." (Citations and punctuation omitted.) Id. at 533 (2) (e). Accordingly, we reverse the judgment of the trial court and remand the case for proceedings consistent with this opinion.

*Judgment reversed and case remanded with direction. Ellington, C. J., and Doyle, J., concur.*

DECIDED JULY 14, 2011 — RECONSIDERATION DENIED JULY 28, 2011.

*Garry T. Moss, District Attorney, Cliff Head, Patricia G. Hull, Assistant District Attorneys*, for appellant.

*J. Alfred Johnson*, for appellee.